JOHN FULLARD, Defendant, *pro se*
6984 Amador Valley Blvd.
Dublin, Ca. 94568
(925) 260-4246 phone
(209) 892-2982 fax



**FILED**

JUL 3 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (OAKLAND)

| | |
|---|---|
| SYLVESTER BURKS, an individual, ) | Case No. CIV 07-cv-05482-CW |
| ) | |
| Plaintiff, ) | RESPONSE TO COMLAINT AND |
| ) | COUNTER CLAIM |
| vs. ) | |
| ) | |
| JOHN FULLARD, an individual, ) | |
| ) | |
| and DOES 1 through 10, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| Defendant ) | |

Defendant JOHN FULLARD, an individual, is responding to the claim and filing a **COUNTER-CLAIM** against the Plaintiff SYLVESTER BURKS. Listed are the facts and the evidence to support my response to the complaint and **COUNTER-CLAIM**.

### NATURE OF THE ACTION

1. This counter-claim is based on facts and evidence obtained from doing business with Professor Burks.

2.  The complaint filed by Professor Burks is fibulas,
    without merit, defamatory, and designed to help
    Professor Burks to make a quick dollar.

3.  Professor Burk's alleged claim arise under the Lanham
    Act, 15 U.S.C. 1051, SECTION 3344 which show that the
    case has no merit because Professor Burks gave the
    Defendant, John Fullard, permission, **"exclusive rights"**,
    and the authority to sue and put Professor Burk's name
    in major magazines and invest time and  energy to
    promote the videos with the organ, piano, and keyboards.
    **(See Exhibit A)**

4.  The Lanham Act covers law governing trademarks, service
    marks and unfair competition. This was not the case with
    the Plaintiff, Professor Burks, and Defendant, John
    Fullard. The law was not broken or miss used with intent
    to take advantage of the Plaintiff, which is core of
    this case.

5.  **Exhibit A** is a written agreement, which was **signed** by
    Professor Burks on March 26, 1999.

6.  The entire alleged complaint was false and fabricated by
    Professor Burks, (i.e. item #9 in the complaint states,
    "in or about 1999, Plaintiff and Defendant Fullard
    entered into an **oral partnership** agreement". This is
    false and without merit. Professor Burks was not a
    partner. I was the director and owner of ABC Gospel

1    Music and had the copyright, trademark, authorship,

2    financial rights or ownership of the company and

3    project.

4    7. Professor Burks had no trademark and was not known

5    around the world in 1999. In fact, he came to me and

6    asked me to promote him and get him known like I was

7    known throughout the world.

8    8.  **Exhibit A** shows the Defendant, John Fullard, as the

9    Project manager, founder, author, and executive director

10    using **his money** to promote the project and Professor

11    Burks.

12    9. **Exhibit A** states, "This is an agreement between Rev.

13    John Fullard and Sylvester Burks to **collaborate** and put

14    together music ventures mainly video production and

15    CDs". The meaning of "collaborate" means to work

16    together toward a common end. Our ultimate goal for this

17    video was to land a major recording deal with Verity

18    Record Company.

19    10. Professor Burks stated that he wanted to be paid as a

20    guest musician and wanted his money before the project

21    was completed. **Exhibit B** is signed receipts for services

22    rendered (making of the video) and shows receipts of

23    money given to Professor Burks for **"hire"**.

24       a. Paid Professor Burks:

25           i. August 12, 1999 $500

1         ii. August 21, 2000 $250

2         iii. August 28, 2000 $200

3    11. Before and after, Professor Burks was paid well for this

4         video project.

5         a.  Paid $1,000 during anniversary of Pastor Ray &

6             Geraldine Mack church located on International Blvd

7             and 73rd Street, Oakland California. They will attest

8             and swear before a judge and jury that they gave me

9             permission to make a presentation of $1,000 to

10            Professor Burks

11        b. Other adventures sponsored and acquired through

12           Defendant John Fullard.

13            i. $4,000 for project in Durham North Carolina

14            ii. $2,000 for project in Dallas Texas

15            iii. $2,000 for project in Hollywood California

16            iv. $3,400 for project

17   **12. Exhibit C** Other expenses

18

19        **CLAIMPLAINT FROM PROFESSOR BURKS**

20

21        The above exhibits have been addressed for your

22        convenience, to reflect the merits of the alleged

23        complaint. The, Defendant, John Fullard believes that

24        this case is without merit and highly recommended that

25

it be dismissed. I will address each item in the
alleged complaint.

1. **Exhibit A** proves that this statement is not
correct. Based on the contract agreement, I have
"exclusive rights" to promote the video created in
1999. This is the only production that I produced.
Any other distribution is in violation to the
agreement.

2. There was no definite time frame established. We
agreed that the project would end when we
negotiated with a major company. There is no proof
that I marketed any products on the Internet with
www.youtube.com. The Plaintiff's reputation, fame,
and fortune was built and based on my introducing
him via my name and trademark beginning in 1999.
His growth and development nationwide was
attributed to my trademark and production. We used
the production I created as a stepping stone to
Professor Burk's opportunity to distribute his
program. See **Exhibit E,** which shows him in the 1999
production on "How to Play the Hammond Organ". Be
advised that Professor Burks does not own the
rights to this production. In the introduction of

the tape, it shows Professor Burks as my **"GUEST"**
organist and not the owner of the production.

3. **Exhibit A** proves that this statement is not true.

4. **Exhibit A** proves that the Defendant did not violate
the Lanham Act.

5. **Exhibit A** proves that I own part of Professor
Burk's production success. If and when a major
recording company buys my portion than I have
rights to the 1999 project.

6. Plaintiff has been miss-informed. My web site is a
teaching program. **Exhibit F** proves that I teach
worldwide at the famed Rev. James Cleveland Gospel
Music Workshop. Each year I have several thousand
in attendance at various workshops. On the web site
you will see that many use it for information
purposes and to determine where my  worldwide
workshops will be held. Professor Burks name is not
used to promote my program. See Exhibit G it shows
all the music productions offered under my
trademark and company.

7. The only name used in my music ministry is Rev.
John Fullard Music Ministry™

8. Addressed in above #7.

9. **Exhibit A** proves that I own the production. **Exhibit B** proves that he was "for hire" and he was paid up front for his services rendered. **Exhibit A** refers to monies that would have been received at conventions. Since the product was used for a **"free Demo"**. No profit was realized from this project. That is why Professor Burks was paid up front as shown in **exhibit B**. No profits were received in this project. The tapes sold for $10. We only sold $3,000 worth of tapes since 1999. Most people want DVDs in today's market. I still have about 400 tapes to sell. We produced 1,000 tapes, not DVDs from the 1999 project. No other DVD products have been made since 1999.

10. **Exhibit A** allows for promotion and production of Professor Burks

11. **Exhibit A** proves that this agreement was never dissolved in writing, or verbally. The reasoned it was not dissolved because I had found a company that wanted to mass-produce the project. Professor Burks was contacted to meet with the company to work out a deal. At that time Teresa, Professor Burks wife, said she was his manager and she had made his tapes and were selling them like hot

cakes. She said they had made over $5,000. She said that she made the tapes at Cathedral Church of God in Christ in Oakland. She informed me that she had created a web site. I saw the site at

. I advised her production was a violation to our agreement and I had **"exclusive rights"** to make and produce new tapes. She walked away and said, "take me to court". I warned her that I had a Contract with Professor Burk's signature. **Exhibit D** are the DVDs made by Burks and his wife, which is a violation to the agreement we have in **Exhibit A.** These DVDs have been sold at conventions. I have not seen the profits from these DVDs.

12. The plaintiff does not own the musical works. He was a hired guest musician who was paid for his services. This is shown in the introduction of the tape, **see exhibit E,** and I am the teacher-narrator. The tape was done in my studio at my expense with the understanding that I was the copyright owner. The tape was a demo for selling to a company. I was in the process of selling it to a major company when Professor Burk's wife made her copy and began selling her production. I still own the rights to

the 1999 production, How to Play the Hammond B-3
organ with Rev. John Fullard and guest organist
Professor Burks.

13. **Exhibit A** proves I have the authority to promote
and distribute the Demo tapes developed in 1999. No
tapes have been made of Professor Burks since.
Listed below are the number of tapes sold. Over 400
was used as a demo for promoting "How to Play the
Hammond Organ with Rev. John Fullard with Guest
Professor Burks.  No DVDs were made. Only my tapes
sold on the Internet for this total period.

14. The You Tube Web site does not belong to me.
Exhibit G is my production. This proves that none
of the clips on my production can be associated
with the You Tube production. This proves that
someone other than the Defendant, John Fullard, Put
it on You Tube.

15. Please be advised that no new tapes were made since
1999 of Professor Burks. My contract was still
valid. See **Exhibit A**.

16. Plaintiff's informant is incorrect and cannot prove
that I sold other works other than 1999 demo
production. No profits have been received. I am
still waiting for the record deal that was

dismissed because Professor Burks Wife was selling "boot leg" tapes of her own production.

17. My phone number is on all my products, web site, and advertisement. I never received a call informing me to cease and desist. It would have taken more than a letter. We would have had to negotiate a settlement contract because of the investment made into Professor Burk's musical career.

18. **Exhibit A** proves that I have a right to use the name one likeness without accounting and compensation.

19. The letters were never received. They were sent to a junk mail P.O. Box 2473 Dublin, Ca. 94568. Had the secretary taken a minute to call 925 833 9379, she would have gotten an address of 6984 Amador Valley Blvd. Dublin, Ca. 94568. I would have received the letter and we could have answered any questions and proved information as needed.

20. **Exhibit A** does not address wrongful conduct and attorney fees and cost. Since **Exhibit A** proves that I was not in violation of the Lanham Act than I should not be held accountable for plaintiff expenses.

## COUNTER-CLAIM

21. This action arises out of the Plaintiff, SYLVESTER BURK'S, attempt to use my name, musical teaching materials, trademark, patent, copyrights, family legend and reputation, and financial resources to enhance his personal gain to become a world-renowned musician in the Gospel Music industry.

22. The Plaintiff, Rev. John Fullard and family is well known in the Gospel Music Field and his family's legend goes back Five generations of musicians. Exhibit "H" shows my immediate family of talented musicians who are well known throughout the World for productions and the recording industry.

23. The Plaintiff, Rev. John Fullard and family have traveled the world and have a reputation for teaching and training musicians for church music ventures. The Plaintiff is known for teaching students from around the world at the famous Rev. James Cleveland Gospel Music Workshop. The plaintiff is the advanced organ teacher and he has books, DVDs, tapes, and other material that is constantly sought after.

24. The Plaintiff, Rev. John Fullard, has his music degree and has played with the San Francisco

Orchestra, Oakland Symphony Chorus, Las Positas College, and major conventions, just to name a few accomplishments.

25. The Plaintiff, Rev. John Fullard, was ordained in 1973 and has pastured several churches in Washington D.C., Baltimore, Philadelphia and other cities. He is sought after to preach, teach, and develop music departments, I.e. Center of Hope, New Hope, Bethany Baptist, St. James, and many more churches over the past 50 years of service.

26. It was my reputation and tenure of service that the Plaintiff, Professor Burks sought after my able and skill to get his name recognize in the music field of music..

27. The Plaintiff, Professor Burks, approached me and asked if I would get his name out there in the Gospel Music field just like everyone knew me in the field. I agreed to do that by creating an agreement in writing and the Plaintiff, Professor Burks, signed the agreement on March 26, 1999. See **Exhibit "A"**.

28. This agreement between the Plaintiff, Sylvester Burks and the Defendant, John Fullard, stated that

we would collaborate and put together a "Demo" video.

29. We agreed that the project belong to the Defendant, Rev. John Fullard. The video introduced the Plaintiff as a "Guest Organist" and the Defendant, Rev. John Fullard, was the founder, author, and narrator/teacher of the project. I was the copyright owner and financial contributor.

30. The Plaintiff, Professor Burks, gave me the authority to use and put his name in major magazines and other venues in an effort to make him famous and known throughout the world just like I was already known in the music industry. See **Exhibit "A"**.

31. The Plaintiff, Professor Burks, agreed that he would get his money up front $3,400. The Plaintiff, Professor Burks, agreed that he would not receive any more money until a major record deal was signed. The $3,400 he received was an investment of my money. No tapes had been sold.

32. The Plaintiff, Professor Burks, was sent on field trips; and expenses for hotel, air transportation, food, and other expenses amounted to over $10,000. I have not received this money back yet.

33. The Plaintiff, Professor Burks, contributed no money to the project. The expenses included the following.

   a. Studio Time

      i. 50 hours @ $75 per hour = $3750

   b. Engineer

      i. 10 hours @ $50 per hour =$500

34. The Plaintiff, Professor Burks, in **Exhibit "A"** gave me **"exclusive"** rights to the video product I produced. His wife took my idea, patent, trademark, and copyright and began making tapes and selling them on the Internet and at conventions.

35. The contract was breached.

36. The Plaintiff, Professor Burks, was not agreeable to a major recording deal with a major company. I called his home and his wife said he would get back to me. He never did. Apparently he was happy with his wife making and selling tapes.

37. Plaintiff, Professor Burks was paid $3,400 cash; $10,000 in air travel, hotel, transportation, and food expenses. $10,000 in promotional campaigns, advertisement, and other journals.

38. Plaintiff, Professor Burks received monies for trips the defendant, John Fullard, set up for him.

a. Trip to Dallas $2000

b. Follow up trip to Dallas $3,000

c. Trip with the Plaintiff and his wife to Durham N.C. $4,000

d. Trip to Hollywood California to play for a wedding $2500.

39. The Defendant, John Fullard, out of pocket expense for this project was over $30,000. This money was invested with the understanding that the Plaintiff, Professor Burks, would not breach the contract. We were scheduled to make a follow up take, which would have been produced by a major company. After the Plaintiff received the monies, exposure, recognition through my trademark, patent ideas, and copyright material, the plaintiff sued me.

40. The project called for only 1000 tapes. No DVD's were produced. The cost to make the tapes were $15 each in 1999. The total out of pocket expense to pay for the tapes were $15,000. 400 tapes were used as Demos to promote the project. 500 were sold at $10 each and 100 tapes are still available in the box. $5,000 was made on this project, which does not cover the cost of making the tapes.

41. The Plaintiff, Professor Burks, has received more than his share of the profits. $3,400 plus $10,000 in expenses paid trips, Engagements worth over $12,000 and monies given him that he received from selling his wife's tapes, which amounted over $5,000.

42. Now the question is who is taking advantaged of in this deal. You can plainly see that the Defendant, John Fullard, has been ripped off big time.

43. Most important the Plaintiff claim that I broke the law by violating the Lanham Act.

44. I think the Plaintiff, Professor Burks, broke the law by breaching his contract and dismissing his contract without advising me and fulfilling his part of the deal, which was to secure a deal with a major recording company.

45. I believe we should both get together and get that recording deal. Once the deal is agreed upon we both will get the monies we seek.

July 28, 2008                    Respectfully submitted

                                 Rev. John Fullard


                                 Defendant, John Fullard

# EXHIBITS FOR THE DEFENDANT

A    CONTRACT SIGN BY BURKS

B    RECEIPTS SIGN BY BURKS

C    EXPENSES

D    BURKS DVD

E    PROJECT VIDEO TAPE

F    GMWA – TEACHER

G    FAMILY BUSINESS